1  Charles E. Slyngstad (SBN 89103)
   E-mail: cslyngstad@bwslaw.com
2  Brian S. Ginter (SBN 265786)
   E-mail: bginter@bwslaw.com
3  Kyle Anne Piasecki (SBN 311961)
   Email: kpiasecki@bwslaw.com
4  BURKE, WILLIAMS & SORENSEN, LLP
   444 South Flower Street, Suite 2400
5  Los Angeles, CA 90071-2953
   Tel: 213.236.0600    Fax: 213.236.2700
6
7  Attorneys for Defendants
   CITY OF LOS ANGELES and
   CHIEF MICHEL MOORE
8

9              UNITED STATES DISTRICT COURT

10             CENTRAL DISTRICT OF CALIFORNIA

11

| | |
|---|---|
| JONATHAN PELTZ and KATHLEEN GALLAGHER<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF LOS ANGELES, a municipal entity; CHIEF MICHEL MOORE, a public entity, and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 2:22-cv-03106-MWF-AGR<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT CHIEF MICHEL MOORE'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>**[Fed. R. Civ. Proc. 12(b)(6)]**<br><br>Date:      February 27, 2023<br>Time:      10:00 a.m.<br>Courtroom: 5A<br>Judge:     The Honorable Michael W. Fitzgerald |

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4886-3294-0871 v1

CASE NO. 2:22-CV-03106-MWF-AGR
DEFENDANTS' MOTION TO DISMISS FAC

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..................................................................................................1
II. ALLEGATIONS IN THE COMPLAINT .........................................................1
III. LEGAL STANDARDS APPLICABLE TO THIS MOTION .......................3
IV. ARGUMENT ....................................................................................................4
   A.   Plaintiffs' Fifth Cause of Action Does Not Set Forth Sufficient Facts to Plead a Supervisory Liability Claim ........................................4
V. CONCLUSION ...............................................................................................15

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Alvarez-Orellana v. City of Antioch*,
No. C-12-4693, 2013 WL 3989300 (N.D. Cal. Aug. 2, 2013) ........................ 6, 13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ......................................................................................... 3

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ......................................................................................... 3

*Castro v. County of Los Angeles*,
833 F.3d 1060 (9th Cir. 2016) ......................................................................... 4

*Cavanaugh v. Cnty. of San Diego*,
No. 3:18-CV-02557-BEN-LL, 2020 WL 6703592 (S.D. Cal. Nov. 12, 2020) ................................................................................................................. 5

*Chappell v. Bess*,
No. 2:01-CV-01979 KJN P, 2012 WL 3276984 (E.D. Cal. Aug. 9, 2012) ................................................................................................................. 11

*Cox v. California Forensic Med. Grp.*,
No. 14-CV-04662-KAW, 2015 WL 237905 (N.D. Cal. Jan. 14, 2015) ................................................................................................................. 6

*Felarca v. Birgeneau*,
891 F.3d 809 (9th Cir. 2018) ................................................................. 4, 9, 10

*Harper v. City of Los Angeles*,
533 F.3d 1010 (9th Cir. 2008) ......................................................................... 4

*Hickman v. City of Berkeley*,
No. C -11-04395 EDL, 2012 WL 12910620 (N.D. Cal. Nov. 1, 2012) ................................................................................................................. 4

*Hydrick v. Hunter*,
669 F.3d 937 (9th Cir. 2012) ........................................................................... 6

*Johnson v. Baca*,
   No. CV1304496MMMAJWX, 2013 WL 12131358 (C.D. Cal. Sept.
   24, 2013) ............................................................................................................ 12

*Johnson v. City of Berkeley*,
   No. 15-CV-05343-JSC, 2016 WL 928723 (N.D. Cal. Mar. 11,
   2016) .................................................................................................................... 6

*Mackinney v. Nielsen*,
   69 F.3d 1002 (9th Cir. 1995) ............................................................................... 6

*Moss v. U.S. Secret Serv.*,
   711 F.3d 941 (9th Cir. 2013) ............................................................................... 7

*Pareto v. FDIC*,
   139 F.3d 696 (9th Cir. 1998) ............................................................................... 3

*Pittman v. Cnty. of San Francisco*,
   No. 13-02095 EJD (PR), 2017 WL 10378333 (N.D. Cal. Jan. 4,
   2017) .................................................................................................................. 11

*Quillers v. Barclays American Credit, Inc.*,
   727 F.2d 1067 (11th Cir. 1984) ........................................................................... 4

*Rosales v. Cnty. of San Diego*,
   511 F. Supp. 3d 1070 (S.D. Cal. 2021) ............................................................... 5

*Sampson v. The City of Los Angeles et al.*,
   No. LACV2203346JAKADS, 2022 WL 18278415 (C.D. Cal. Nov.
   22, 2022) .................................................................................................. 10, 11, 13

*Shirazi v. Oweis*,
   No. 5:21-CV-00136-EJD, 2022 WL 445763 (N.D. Cal. Feb. 14,
   2022) .................................................................................................................... 7

*Starr v. Baca*,
   652 F.3d 1202 (9th Cir. 2011) ............................................................................. 5

*Tapia Carmona v. Cnty. of San Mateo*,
   No. 18-CV-05232-LHK, 2019 WL 4345973 (N.D. Cal. Sept. 12,
   2019) .................................................................................................................... 6

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4886-3294-0871 v1              - iii -              CASE NO. 2:22-CV-03106-MWF-AGR
                                                        DEFENDANTS' MOTION TO DISMISS FAC

*Turano v. Cnty. of Alameda*,
  No. 17-CV-06953-KAW, 2018 WL 3054853 (N.D. Cal. June 20,
  2018) ................................................................................................................ 12

**Federal Statutes**

42 U.S.C. § 1983 .................................................................................................. 1, 4, 10

**State Statutes**

Bane Act ........................................................................................................................ 1

California Penal Code §409 ........................................................................................ 14

**Other Authorities**

Federal Rules of Civil Procedure Rule 12(b)(6) .................................................. 1, 2, 3

First Amendment ............................................................................................. 4, 7, 9, 13

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4886-3294-0871 v1                - iv -            CASE NO. 2:22-CV-03106-MWF-AGR
                                                       DEFENDANTS' MOTION TO DISMISS FAC

## I. INTRODUCTION

Plaintiffs Jonathan Peltz and Kathleen Gallagher ("Plaintiffs") sue Chief Michel Moore for his role as chief of the Los Angeles Police Department. In this First Amended Complaint ("FAC"), Plaintiffs bring only one claim against Chief Moore for supervisory liability.[1] Plaintiffs admit Chief Moore was not present the night of their arrests and could not have been personally involved in their arrests. Still, Plaintiffs attempt to extend liability to him. Rather than pleading concrete factual allegations about things such as training programs, supervision of subordinates, and policies, practices, and customs, Plaintiffs simply put forth conclusory allegations that do nothing more than track the elements of the claim they wish to advance in a threadbare fashion. Plaintiffs' general references to dated articles and settlements do not factually develop their conclusions. Consequently, Chief Moore seeks dismissal of Plaintiffs' claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that Plaintiffs fail to allege facts upon which relief can be granted.

## II. ALLEGATIONS IN THE COMPLAINT

Plaintiffs allege the following as part of their Complaint. They are reporters for Knock LA, a news website. (FAC ¶¶ 22, 27.) At about 5:00 p.m. on the evening of March 25, 2021, Plaintiff arrived near Echo Park Lake to report about a protest concerning the removal of the homeless encampment at Echo Park. (*Id.*) Plaintiffs stood on Lemoyne Street next to the Angelus Temple to observe the protest. (*Id.* at ¶ 29.) The people on Lemoyne Street were told to move and/or disperse at least twice. (*Id.* at ¶¶ 30-33.) More specifically, at 8:10 p.m., Plaintiffs heard LAPD officers say, "members of media disperse now." (*Id.* at ¶ 32.) Plaintiffs learned that the LAPD was telling reporters to go to a media staging area on the other side of the

---

[1] In their original complaint, Plaintiffs brought the following claims against Chief Moore: (1) *Monell* municipal liability under 42 U.S.C. § 1983; (2) violation of the Bane Act; (3) negligence; and (4) false arrest/false imprisonment.

Angelus Temple, but they chose not to go because this area supposedly did not have a clear view of the police action against the unhoused people along the lake. (*Id.* at ¶ 33.) The LAPD then "trapp[ed]" Plaintiffs by occupying both sides of the block on Lemoyne Street (referred to as "kettling"). (*Id.* at ¶ 35.) Plaintiffs identified themselves as members of the press, but were still arrested. (*Id.* at ¶ 38.)

Plaintiffs do not allege that Chief Moore was present during any part of the protest or Plaintiffs' arrests or that he made or directed any action during the protest, including the arrests. Quite the opposite. Plaintiffs allege that Chief Moore delegated authority to others within his command staff to act as final policymakers in determining the response to the Echo Park Lake protest. (*Id.* at ¶ 53.) Plaintiffs also allege that there was no time, opportunity, or procedure for anyone (such as Chief Moore) to review or revise the decisions made at the protest before they were implemented. (*Id.*)

Plaintiffs make the following allegations in regards to Chief Moore. He is a policymaker for his department. (*Id.* at ¶ 19.) The LAPD prepared an "Event Action Plan" for its plan to remove the unhoused people living along Echo Park Lake and Chief Moore reviewed this plan. (*Id.* at ¶ 52.) Plaintiffs do not allege facts regarding the contents of this plan or how Chief Moore's review of this plan supports their claim, if that is in fact what they are attempting to allege. Plaintiffs also allege that

> . . . Chief Moore maintained unconstitutional customs, practices, and policies of restricting or retaliating against the press for attempting to gather news on police activity, inadequate training regarding the First Amendment right of the press and the public to record police activities in public, detaining members of the press without probable cause, and inadequate discipline of police officers who violate constitutional rights of the press.

(*Id.* at ¶ 81.)

Plaintiffs also allege that Chief Moore had actual or constructive knowledge of these unlawful policies or customs and that he "acted or failed to act with deliberate indifference to both the foreseeable consequences of these policies and to Plaintiffs' constitutional rights" and that he disregarded known or obvious consequence of training deficiencies which caused Defendant Does to violate Plaintiffs' constitutional rights. (*Id*. at ¶¶ 82, 83.)

### III. LEGAL STANDARDS APPLICABLE TO THIS MOTION

A court may dismiss a complaint under Federal Rules of Civil Procedure 12(b)(6) when it does not contain enough facts to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . Factual allegations must be enough to raise a right to relief above the speculative level . . ." *Twombly,* 550 U.S. at 555.

In considering a motion to dismiss, a court must accept the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *Id.* at 550. However, mere "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. A motion to dismiss is also appropriate where a plaintiff discloses some absolute

defense or bar to recovery in his pleading. Fed. R. Civ. P. (12)(b)(6); *Quillers v. Barclays American Credit, Inc.*, 727 F.2d 1067, 1069 (11th Cir. 1984), cert. denied, 476 U.S. 1124 (1986).

## IV. ARGUMENT

### A. Plaintiffs' Fifth Cause of Action Does Not Set Forth Sufficient Facts to Plead a Supervisory Liability Claim

Plaintiffs have not sufficiently alleged a supervisory liability claim against Chief Moore. To prove a claim for supervisory liability under section 1983, Plaintiffs must show that they were deprived of a constitutional right and that either the supervisor was personally involved in the constitutional deprivation, or that "a sufficient causal connection exists between the supervisor's wrongful conduct and the constitutional violation." *Felarca v. Birgeneau*, 891 F.3d 809, 819-20 (9th Cir. 2018) (internal quotations omitted). Plaintiffs must allege facts that demonstrate that Chief Moore's conduct was both the actual and proximate cause of an alleged injury and that his acts were more than mere negligence. *Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008); *Castro v. County of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016). A supervisor must have notice of the subordinates' unconstitutional acts in order to be liable for supervisorial liability. *Hickman v. City of Berkeley*, No. C -11-04395 EDL, 2012 WL 12910620, at *13, 14 (N.D. Cal. Nov. 1, 2012).

Plaintiffs believe they meet the requirements for supervisory liability because they alleged that Chief Moore "maintained unconstitutional customs, practices, and policies of [1] restricting or retaliating against the press for attempting to gather news on police activity, [2] inadequate training regarding the First Amendment right of the press and the public to record police activities in public, [3] detaining members of the press without probable cause, and [4] inadequate discipline of police officers who violate constitutional rights of the press." (FAC at ¶ 81).

The alleged policies and practices are not buttressed by sufficient allegations

of fact. In *Starr v. Baca*, the plaintiff adequately alleged that the supervising defendant knew that his subordinates were engaged in culpable action by alleging that the defendant (1) received a "findings letter" from a Department of Justice investigation finding a continued and serious pattern of constitutional violation including inmate on inmate violence, (2) received weekly reports from his subordinates reporting deaths and injuries in the jail, (3) had been part of a memorandum of understanding to correct constitutional violations to which inmates were being subjected to, (4) received repeated notice of numerous violations regarding failure to supervise from his in-house lawyers (with specific incidents listed in the complaint), (5) was named as a defendant in a suit where a deputy falsified information that led to the beating of a prisoner by other prisoners, and (6) received on going reports about inmate abuse from special counsel and the Office of Independent Review. 652 F.3d 1202, 1209-12 (9th Cir. 2011). The court found that, based on these allegations, the supervising defendant was on notice and that the plaintiff established a plausible nexus between the subordinates' wrongdoings and the supervisor's policies and acquiescence in misconduct. *Id*. at 1216-17.

By comparison, it is insufficient to simply allege that the defendant supervisor knew of the violations of constitutional rights and failed to act to prevent them, that the supervisor did nothing to stop his subordinates from engaging in wrongful conduct, or that the supervisor maintained unconstitutional policies without detailing the contents of those policies. *See Rosales v. Cnty. of San Diego*, 511 F. Supp. 3d 1070, 1085 (S.D. Cal. 2021); *see also Cavanaugh v. Cnty. of San Diego,* No. 3:18-CV-02557-BEN-LL, 2020 WL 6703592, at *29 n.21 (S.D. Cal. Nov. 12, 2020)*,* aff'd, No. 20-56311, 2021 WL 6103115 (9th Cir. Dec. 22, 2021) ("[W]hile Plaintiffs[ ] conclusorily allege Sheriff Gore was aware deputies failed to follow policy and procedure, there are no allegations as to how he knew this, when he was informed of it, any basis for this knowledge, or which policies he knew were being violated. Thus, such generalized allegations of knowledge fail to meet the

*Iqbal* standard."); *Cox v. California Forensic Med. Grp.*, No. 14-CV-04662-KAW, 2015 WL 237905, at *1 (N.D. Cal. Jan. 14, 2015) ("It is insufficient for a plaintiff only to allege that supervisors knew about the constitutional violation and that they generally created policies and procedures that led to the violation, without alleging a specific policy or a specific event instigated by them that led to the constitutional violations."); *Hydrick v. Hunter*, 669 F.3d 937, 942 (9th Cir. 2012) (holding same); *Johnson v. City of Berkeley*, No. 15-CV-05343-JSC, 2016 WL 928723, at *3–4 (N.D. Cal. Mar. 11, 2016) ("It is one thing to plead that City Manager Daniel and Chief Meehan ordered 'the police [to] take an aggressive crowd control approach' and another to say that because they did nothing (i.e., through their omission) the police took such an approach. '[P]laintiffs [ ] must allege some culpable action or inaction for which a supervisor may be held liable.' ") (internal citations omitted); *Tapia Carmona v. Cnty. of San Mateo*, No. 18-CV-05232-LHK, 2019 WL 4345973, at *7 (N.D. Cal. Sept. 12, 2019) (holding a plaintiff must "specify the content of the policies, customs, or practices the execution of which gave rise to [Plaintiff's] constitutional injuries" and dismissing claim against sheriff when the plaintiff did not " 'specifically alleg[e] numerous incidents' of unconstitutional conduct by subordinates or that [the sheriff] was 'specifically ... given notice of all of these incidents,' including specific allegations of 'systematic problems . . . under his supervision.' ") (internal citation omitted); *Mackinney v. Nielsen*, 69 F.3d 1002, 1008 (9th Cir. 1995) (allegations that a police chief was aware of similar incidents where the plaintiff's rights were violated by police were not sufficient to allege that the chief adopted a policy so deficient that it repudiated the plaintiff's rights); *Alvarez-Orellana v. City of Antioch*, No. C-12-4693, 2013 WL 3989300, at *5 (N.D. Cal. Aug. 2, 2013) (rejecting the plaintiffs' allegations that the sheriff was aware, knew and had reasonable basis to learn and/or to believe that his subordinates at the police department engaged in a pattern and practice in violation of the law and finding that there was no basis for inferring notice based on a court

order that came 15 years prior to the sheriff taking office).

In regards to training, Plaintiffs must allege facts about the purported inadequacies of the officers' training. *Shirazi v. Oweis*, No. 5:21-CV-00136-EJD, 2022 WL 445763, at *3–4 (N.D. Cal. Feb. 14, 2022) (finding allegations the supervisors "knew officers had inadequate training and that they 'caused the violation of [P]laintiff's constitutional rights as a result of their ... deliberate indifference to the need for more or different training' " to be too conclusory); *Moss v. U.S. Secret Serv.*, 711 F.3d 941, 968 (9th Cir. 2013) (finding claim against supervisors should be dismissed because the protestors "allege[d] no facts whatsoever about the officers' training or supervision, nor d[id] they specify in what way any such training was deficient.").

Here, it is not clear what alleged facts supposedly support Plaintiffs' claim of an unconstitutional policy or custom. It is not even clear what theory of supervisory liability Plaintiffs are alleging. Chief Moore either "maintained unconstitutional customs, practices, and policies" or "had either actual or constructive knowledge of the unlawful policies, practices, and customs" and "acted or failed to act with deliberate indifference [sic] to both the foreseeable consequences of these policies." (Compl. at ¶¶81, 82.) There are no allegations in the complaint specific to training (much less training regarding the First Amendment rights of the press) other than that it was "inadequate." (Compl. ¶81.) There are also no allegations in the complaint regarding discipline of officers who violate constitutional rights of the press (again, other than any such discipline was "inadequate.") (*Id.*) Plaintiffs claim that there were policies to retaliate against the press for attempting to gather news and to detain the press without probable cause, but Plaintiffs fail to name such policies or detail their contents. Moreover, there are no allegations that Chief Moore gave orders that led to the alleged constitutional violations or that he witnessed any alleged unconstitutional acts—much less allegations as to which officers ordered or committed alleged unconstitutional acts or that Chief Moore had

notice that these officers had previously committed similar constitutional violations.

Plaintiffs do claim in their complaint that "LAPD has an extensive history of violating the rights of journalists" and cite to various articles. (Compl. ¶7.) The first article is from 14 years before Plaintiffs' arrest and alleges protesters and journalists were assaulted when the police chief was Chief William Bratton. (Compl., fn. 1.) The second article is from seven years before Plaintiffs' arrest and quotes an individual who believed the LAPD used constitutionally dubious crowd-control tactics. (*Id.* at fn. 2.) The article does not specifically mention the press but does state that protesters were arrested after disrupting traffic and dispersal orders were given. (*Id.*) The third article is an Op-ed published nine months *after* Plaintiffs' arrest and references the Echo Park protest and another subsequent protest. (*Id.* at fn. 3.) Like the first two articles, it does not state whether the arrests were found to be unconstitutional. (*Id.*) The final article was also published nine months *after* Plaintiffs' arrest, does not support what it is cited for, and discusses allegations from across the United States. Lastly, Plaintiffs generally allege that "unlawful arrests and police brutality against journalists is a national problem," citing to an "incident database" which includes self-reported alleged assaults and arrests across the country without limitation to time. (*Id.* at ¶9, fn. 5, 6.) Perhaps most importantly, there is no information or cited authority as to whether these alleged assaults/arrests were found to be unconstitutional. These references, unlimited by time and geography of arrests that may have been legally justified and/or supported by probable cause, do not support the claim that, as of March 2021, the LAPD had an unconstitutional custom of: retaliating against the press, providing inadequate training regarding treatment of the press, detaining press without probable cause, or failing to discipline officers who violate constitutional rights of the press, or that Chief Moore had notice of or maintained such customs.

Plaintiffs also reference a few past settlement agreements concerning agreed upon police practices for demonstrations (e.g., use of helicopters, less lethal tools,

etc.). (*Id.* at ¶49.) These settlements also do not support Plaintiffs' claim that Chief Moore had knowledge that the LAPD in 2021 (and specifically the officers who were present at the Echo Park protest) were engaged in conduct that would deprive journalists of their constitutional rights. In other words, these settlement agreements do not establish notice of wrongdoings or a causal nexus. First, the latest settlement was in 2014, seven years before this 2021 incident. The remaining settlements were ten or more years older. (Appendices 5–8 in the March 15, 2021 Independent Examination.) Plaintiffs do not allege that Chief Moore was involved in or aware of these settlements. Second, Plaintiffs allege that these settlements actually "resulted in changes to LAPD policies, procedures, and training regarding kettling, dispersal orders, excessive force, and arrests during demonstrations." (Compl. at ¶49.) Third, the independent examination and settlements do not reference treatment of the press specifically, such as referencing retaliation against the press for gathering news on police activity. It is therefore unclear how these documents support the allegation that Chief Moore maintained or had constructive notice of "unconstitutional customs, practices, and policies of restricting or retaliating against the press for attempting to gather news on police activity, inadequate training regarding the First Amendment right of the press and the public to record police activities in public, detaining members of the press without probable cause, and inadequate discipline of police officers who violate constitutional rights of the press." (Compl. at ¶81.)

Case law also holds that these articles and settlements are insufficient factual support for a supervisory liability claim for a multitude of reasons. First, courts have held that prior complaints that a protestor suffered injuries or was arrested and a supervisor's awareness of these complaints does not equate to a supervisor's awareness of his subordinates' unconstitutional acts as the complaints could be the result of lawful uses of force or lawful arrests and prior complaints alone are not enough to suggest that unlawful behavior will be repeated. *See Felarca*, 891 F.3d at 820–23. In *Felarca*, the plaintiff alleged the police chief ordered the removal of

tents, protests ensued, and the chief knew that batons had been used to injure protesters during an earlier afternoon protest. *Id*. at 820. The Ninth Circuit found these allegations were not sufficient to state a claim of supervisory liability because there were no allegations that the police chief directly ordered the officers to beat protesters with batons and he "had no reason to assume that police would use force beyond the bounds of [the applicable] policy." *Id*. at 820-821. While there were allegations that some protesters were injured during the protests earlier that day, this "hardly show[ed]" police exceeded their authority or that they would do so again during an evening protest because injuries could be caused by lawful uses of batons. *Id*. The court deemed plaintiffs' argument to be "nothing more than an attempt to hold [the chief] liable solely by virtue of [his] office," which fails because "there is no respondeat superior liability under section 1983." *Id*.

Similarly, in *Sampson v. The City of Los Angeles*, the court dismissed the supervisory claim against Chief Moore despite

> allegations that Chief Moore was made aware of previous complaints of similar police use of force from the preceding days of protests . . . [E]ven if Chief Moore was allegedly aware that protesters were injured previously, that is not enough to suggest that such techniques would be unlawfully used again. Although some protesters were injured at the previous protests, those injuries may have been due to the use of lawful force . . . While the Complaint alleges there were complaints filed with LAPD from the preceding days of protests, it does not allege sufficient facts to support the contention that Chief Moore knew or should have known that those complaints were true . . . Nor are the allegations as to the failure of Chief Moore to act on previous complaints sufficient to create the inference of a policy that was *the moving force* behind the incidents on May 30, 2020.

*Sampson v. City of Los Angeles et al.*, No. LACV2203346JAKADS, 2022 WL

18278415, at *9–11 (C.D. Cal. Nov. 22, 2022) (emphasis added); *see also Chappell v. Bess*, No. 2:01-CV-01979 KJN P, 2012 WL 3276984, at *17 (E.D. Cal. Aug. 9, 2012) (finding a plaintiff's previous letters to a supervisor warden that a defendant officer had committed wrongdoings did not reasonably put the warden on notice of the alleged misconduct of the defendant because the letters did not contain any allegations that would distinguish them from other inmate communications to the warden in which prisoners alleged wrongful conduct by staff). Accordingly, if unsubstantiated complaints of unconstitutional acts at the same protest, without more, is insufficient to put a supervisor on notice of his subordinates' continued unlawful behavior, Plaintiffs' citation to articles—in which individuals, seven or more years earlier, alleged the LAPD used questionable crowd-control tactics or assaulted protesters—do not come close to supporting their legal conclusions that Chief Moore was on notice that his subordinates had numerous unlawful customs toward the press as of March 2021.

Second, alleged prior unlawful behavior of subordinates must be similar to the unlawful behavior alleged in the present case and the supervisor must be aware of or involved in the prior complaints to be on notice. The plaintiff in *Sampson* included a detailed history of past protests in Los Angeles that involved claims that LAPD used excessive force and referred to several court settlements arising out of those protests. *Sampson,* 2022 WL 18278415, at *10. In spite of these complaints and settlements, the court did not find that the plaintiff alleged supervisory liability against Chief Moore for any and all claims of excessive force by the LAPD during a protest. Instead, the court looked more specifically at whether the factual allegations of the prior settlements were sufficient to show that Chief Moore should have known that his alleged actions in *Sampson* (ordering boundaries to restrict movements by protesters) would cause officers to violate the constitutional rights of protesters. *Id.*; *see also Pittman v. Cnty. of San Francisco*, No. 13-02095 EJD (PR), 2017 WL 10378333, at *9 (N.D. Cal. Jan. 4, 2017) (finding the supervisory liability

claim against the sheriff failed despite the plaintiff's assertions that there have been numerous complaints filed against SFSD's deputies for excessive force and that the sheriff should "remain as a Defendant based on pervasiveness" of these lawsuits because there was no specific allegation that the sheriff was personally aware or involved in those complaints, much less involved in the present excessive force claim against the officer defendant); *Johnson v. Baca,* No. CV1304496MMMAJWX, 2013 WL 12131358, at *9 n.47 (C.D. Cal. Sept. 24, 2013) (dismissing sheriff from supervisory claim and finding that, although the numerous reports specific to the jail were sufficient to put the sheriff on notice that the conditions experienced by mentally ill inmates were generally poor, they did not put him on notice that mentally ill or suicidal inmates were subject to improper monitoring); *Turano v. Cnty. of Alameda*, No. 17-CV-06953-KAW, 2018 WL 3054853, at *9 (N.D. Cal. June 20, 2018) (dismissing supervisor defendants because the plaintiff did not allege facts showing that they knew of the unsanitary conditions or failure to provide feminine hygiene products, despite allegations that the county had a "significant history of . . . housing female inmates in unsanitary and garbage filled cells which pose a health hazard, and failing to provide for the feminine hygiene needs" and despite a prior lawsuit and settlement with similar allegations because the plaintiff did not allege that the supervisor defendants were involved in the suit or the settlement of the suit). Plaintiffs' allegations are insufficient under this analysis as well.

The Plaintiffs here do not allege prior complaints—much less prior complaints that name the same officer defendants—that involve the same constitutional violations alleged here. Nor do they allege that Chief Moore was aware of and involved in these complaints so as to be "on notice." The two articles cited by Plaintiffs generally allege that the protesters were assaulted by LAPD and that the crowd control techniques were questionable. Neither the articles nor the settlements state facts, and Plaintiffs do not allege facts, in support of their

allegation that Chief Moore maintained or had notice of specific policies regarding retaliating against the press, failed to adequately train officers regarding the First Amendment rights of press, and failed to adequately discipline officers who violate the rights of the press.

Plaintiffs also fail to explain why the past settlements should constitute notice sufficient to compel Chief Moore to take preventative measures. As Plaintiff alleges, the prior settlements *resulted in changes* to LAPD policies, procedures, and training regarding kettling, dispersal orders, excessive force, and arrests during demonstrations. (Compl. ¶49) (emphasis added.) The court in *Brooks v Haggett* found the plaintiff had not alleged a supervisory liability claim against a supervisor for failing to act to prevent an officer's alleged use of excessive force when the officer had prior instances of excessive force because the officer had been subjected to disciplinary actions for his past behavior, and the supervisor expected the officer to now abide by the rules and procedures of the department. No. C 07-2615 SBA (PR), 2009 WL 688855, at *10 (N.D. Cal. Mar. 16, 2009). The court found that, in light of the disciplinary action, the supervisor's expectation was reasonable and that it was unreasonable to expect the supervisor to take any preventative action. So too here, it is unclear how the settlement agreements themselves, "resulting in changes to LAPD policies," constituted enough notice to require Chief Moore to take preventative action.

Lastly, the *Sampson* court noted in dismissing the supervisory liability claim that the plaintiff did not allege that the involved officers were the officers involved in the prior, similar complaints. *Sampson,* 2022 WL 18278415, at *10. As mentioned above, Plaintiffs fail to allege that the officer defendants who allegedly violated their constitutional rights had previously committed similar unlawful acts, or that Chief Moore was aware of these past acts.

Additionally, if there is no constitutional violation, there is no supervisory liability violation. *Alvarez-Orellana,* 2013 WL 3989300, at *8. Plaintiffs admit the

press was informed that there was a media staging area located one block over on the other side of the Angelus Temple, which, according to the map in Plaintiffs' Complaint, was outside of the anticipated, impacted area, but within a reasonable view of the unhoused people along the lake and the LAPD line, as was called for in the cited LAPD Media Relations Handbook. (Compl. ¶¶25, 33.) Plaintiffs did not attempt to go to the viewing area and decided to ignore this order. (*Id*. at ¶33.) Plaintiffs also admit that they heard the LAPD give an amplified message, and soon after they directly heard a dispersal order but decided not to leave. (*Id* at ¶32.) Disobeying a lawful warning to disperse is a misdemeanor. California Penal Code §409. Plaintiffs argue that their arrests as members of the press were in violation of the "LAPD's October 30, 2020 Press Policy," which allegedly "require[s] officers to allow 'media representatives [to remain] behind skirmish lines' after declaring an unlawful assembly . . ." (*Id* at ¶40.) The October 30, 2020 letter actually states:

> When an unlawful assembly has been declared and a dispersal order has been given the Incident Commander (IC) and PIO representative *will* establish a safe working area for members of the media. Officers are reminded that media representatives *may* be allowed behind skirmish lines but may not move back and forth through police lines or otherwise interfere with police actions.

Ex. A to the Complaint (emphasis added)). Plaintiffs admit the LAPD provided a safe working area for members of the media and that they simply refused to use it. (See Compl. ¶33 and map on p. 9.)

      Plaintiffs fail to name a policy that states press are allowed to disobey dispersal orders and remain wherever they please. Accordingly, under Plaintiffs' own allegations, they admit they disobeyed a dispersal order, a misdemeanor offense, and were subsequently arrested. They do not allege facts to support the claim that their arrests were performed to preclude them from exercising their freedom of speech or that their arrests were without probable cause. As Plaintiffs do

not sufficiently allege violation of their underlying constitutional rights, they cannot bring a supervisory liability claim.

For these reasons, Plaintiffs' supervisory liability claim should be dismissed.

## V. CONCLUSION

For the above reasons, Chief Moore's motion to dismiss should be granted.

Dated: January 19, 2023       BURKE, WILLIAMS & SORENSEN, LLP

By */s/ Charles E. Slyngstad*
Charles E. Slyngstad
Brian S. Ginter
Kyle Anne Piasecki
Attorneys for Defendants
CITY OF LOS ANGELES and CHIEF MICHEL MOORE

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for the City Of Los Angeles and Chief Michel Moore, certifies that this brief contains 4,838 words, which complies with the word limit of L.R. 11-6.1.

Dated: January 19, 2023       BURKE, WILLIAMS & SORENSEN, LLP

By */s/ Charles E. Slyngstad*
Charles E. Slyngstad