DAVIS WRIGHT TREMAINE LLP
KELLI L. SAGER (State Bar No. 120162)
  kellisager@dwt.com
DAN LAIDMAN (State Bar No. 274482)
  danlaidman@dwt.com
CRISTINA SALVATO (State Bar No. 295898)
  tinasalvato@dwt.com
350 South Grand Avenue, 27th Floor
Los Angeles, California 90071
Telephone:  (213) 633-6800
Fax:  (213) 633-6899

Attorneys for Non-Party Journalist
James Queally

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHAN PELTZ and KATHLEEN GALLAGHER,<br><br>        Plaintiffs,<br><br>   vs.<br><br>CITY OF LOS ANGELES ET AL.,<br><br>        Defendants. | Case No. **2:2-CV-03106-HDV(AGRx)**<br><br>**NOTICE OF MOTION AND MOTION OF NON-PARTY JOURNALIST JAMES QUEALLY TO QUASH TRIAL SUBPOENA; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[Declarations of James Queally and Dan Laidman With Exhibits A-D Filed Concurrently; [Proposed] Order submitted Concurrently]<br><br>Hearing Date:  June 26, 2025<br>Hearing Time:  10:00 a.m.<br>Courtroom:    5B<br><br>Complaint Filed:  May 9, 2022<br>Trial Date:      August 5, 2025 |

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

NOTICE IS HEREBY GIVEN that on June 26, 2025, at 10:00 a.m., before the Honorable Hernán D. Vera in Courtroom 5B of the of the above-referenced Court, located at 350 West 1st Street, Los Angeles, California, non-party journalist James Queally will and hereby does move this Court pursuant to Federal Rule of Civil Procedure 45(d)(3) for an order quashing the subpoena ("Subpoena") issued by Plaintiffs Jonathan Peltz and Kathleen Gallagher (collectively, "Plaintiffs") and served on Mr. Queally on May 9, 2025, which seeks his testimony at trial in this matter. See concurrently filed Declaration of James Queally and Exhibit A.[1]

As set forth in more detail in the attached Memorandum of Points and Authorities, Plaintiffs' Subpoena should be quashed because the qualified federal reporter's privilege under the First Amendment to the United States Constitution protects Mr. Queally against the compelled disclosure of information acquired in connection with his newsgathering activities. See Shoen v. Shoen, 5 F.3d 1289, 1292 (9th Cir. 1993) ("Shoen I"). Plaintiffs cannot meet the strict standards for overcoming this constitutional privilege, which requires (1) the exhaustion of alternative sources; (2) a showing that the information sought would not be cumulative; and (3) a showing that the information sought is clearly relevant to an important issue. Shoen v. Shoen, 48 F.3d 412, 416 (9th Cir. 1995) ("Shoen II").

This motion is based upon the attached Memorandum of Points and Authorities; the declarations of James Queally and Dan Laidman with Exhibits A-D; the complete files and records in this action, and such oral argument and other documents as may be received by this Court at any hearing on this motion.

---

[1] The Subpoena lists May 27, 2025, as the date of Mr. Queally's appearance, and an accompanying cover letter dated May 9, 2025, advised him to be "on call" from May 27, 2025, through June 2, 2025. See Queally Decl. ¶ 3, Ex. A. However, on May 22, 2025, the Court entered an order vacating the May 27, 2025 trial date, and setting a new trial date of August 5, 2025. See Dkt. No. 122.

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on May 16, 2025.  <u>See</u> Laidman Decl. ¶ 2.

DATED: May 23, 2025

DAVIS WRIGHT TREMAINE LLP
KELLI L. SAGER
DAN LAIDMAN
CRISTINA SALVATO

By:_____/s/*Dan Laidman*_____
Dan Laidman

Attorneys for Non-Party Journalist James Queally

MOTION TO QUASH
4938-4028-7046v.1 0026175-000606

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ........................................... 1

I.     SUMMARY OF ARGUMENT ...................................................................... 1

II.    FACTUAL BACKGROUND.......................................................................... 3

III.   PLAINTIFFS' SUBPOENA TO MR. QUEALLY IS BARRED BY THE FIRST AMENDMENT REPORTER'S PRIVILEGE............................ 5

    A.   The Privilege Applies to Plaintiffs' Subpoena to Mr. Queally ........... 6

    B.   Plaintiffs Cannot Meet Their Burden of Overcoming The Privilege........................................................................................... 10

        1.   Plaintiffs Cannot Establish That The Information Sought Is Clearly Relevant to An Important Issue In The Case .......... 12

        2.   The Information is Available from Other Sources. ................. 16

        3.   The Information Sought Is Cumulative ................................... 19

IV.    CONCLUSION............................................................................................ 20

iii

**DAVIS WRIGHT TREMAINE** LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

# TABLE OF AUTHORITIES

**Page**

**Cases**

Carushka, Inc. v. Premiere Products, Inc.,
   1989 WL 253565 (C.D. Cal. Sept. 1, 1989) ...................................................... 18

City of San Jose v. Superior Court,
   2 Cal. 5th 608 (2017) ...................................................... 17

Fost v. Superior Court,
   80 Cal. App. 4th 724 (2000) ................................................ 10

Haas Automation, Inc. v. Steiner,
   750 F. Supp. 3d 1107 (C.D. Cal. 2024) ........................................... 17

Harbert v. Priebe,
   466 F.Supp.2d 1214 (N.D. Cal. 2006) .................................... 11, 14, 16

In re Behar,
   779 F. Supp. 273 (S.D.N.Y. and C.D. Cal. 1991) ................................. 19

In re Howard,
   136 Cal. App. 2d 816 (1955) ................................................. 10

In re Schuman,
   552 A.2d 602 (N.J. 1989) ...................................................... 8

In re Slack,
   768 F. Supp. 2d 189 (D.D.C. 2011) ...................................................... 8

Jimenez v. City of Chicago,
   733 F. Supp. 2d 1268 (W.D. Wash. 2010) ........................................ *passim*

McMenamin v. Tartaglione,
   590 A.2d 802 (Pa. Commw. Ct. 1991), aff'd without op., 590 A.2d 753
   (Pa. 1991) ...................................................... 8

Michael v. Estate of Kovarbasich,
   2015 WL 8750643 (C.D. Cal. Dec. 11, 2015) .................................... 17

Miller v. Superior Ct.,
   21 Cal. 4th 883 (1999) ...................................................... 6

iv

MOTION TO QUASH
4938-4028-7046v.1 0026175-000606

**DAVIS WRIGHT TREMAINE** LLP
350 SOUTH GRAND AVENUE, 27ᵀᴴ FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

O'Neill v. Oakgrove Constr.,
  71 N.Y.2d 521 (1988) .............................................................6

Parsons v. Watson,
  778 F. Supp. 214 (D. Del. 1991)...........................................9

People v. Sanchez,
  12 Cal. 4th 1 (1995) .......................................................... 14

Playboy Enterprises, Inc. v. Superior Court,
  154 Cal. App. 3d 14 (1984) ................................................ 10

RE/MAX International, Inc. v. Century 21 Real Estate Corp.,
  846 F. Supp. 910 (D. Colo. 1994).................................... 8, 16

Riley v. City of Chester,
  612 F.2d 708 (3d Cir. 1979)............................................... 17

Shoen v. Shoen,
  48 F.3d 412 (9th Cir. 1995) ........................................ *passim*

Shoen v. Shoen,
  5 F.3d 1289 (9th Cir. 1993) ........................................ *passim*

United States v. Blanton,
  534 F. Supp. 295 (S.D. Fla. 1982) .........................................8

United States v. Burke,
  700 F.2d 70 (2d Cir. 1983).......................................... 16, 19

United States v. Cuthbertson,
  630 F.2d 139 (3d Cir. 1980)..................................................5

United States v. LaRouche Campaign,
  841 F.2d 1176 (1st Cir. 1988).......................................... 5, 6

Wright v. Fred Hutchinson Cancer Research Center,
  206 F.R.D. 679 (W.D. Wash. 2002) .............................. 11, 12, 18

Zerilli v. Smith,
  656 F.2d 705 (D.C. Cir. 1981) ............................................ 11

**Statutes**

Cal. Evid. Code § 1070 (California Shield Law)......................... 6, 9, 10, 14

MOTION TO QUASH
4938-4028-7046v.1 0026175-000606

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

Cal. Gov't Code
    § 7920.000 et seq. (California Public Records Act, "CPRA") ......................... 17
    § 7923.610 ................................................................................................... 11
    § 7923.615 ................................................................................................... 11

**Rules**

Fed. R. Civ. Proc. 45 .........................................................................................5

**Constitutional Provisions**

Cal. Const., Article I § 2(b) ...............................................................................9

U.S. Const. amend. I ...............................................................................*passim*

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    SUMMARY OF ARGUMENT

The free flow of information to the public is jeopardized when litigants use the coercive power of the Court to force journalists to testify in support of parties' private aims, which undermines reporters' credibility and hampers their ability to do their job.  To guard against this, the Ninth Circuit recognizes a powerful First Amendment-based journalist's privilege that sets a purposefully-high bar where "compelled disclosure from a journalist must be a <u>last resort</u>." <u>Shoen v. Shoen</u>, 5 F.3d 1289, 1297 (9th Cir. 1993) ("<u>Shoen I</u>") (emphasis added).  If "the privilege does not prevail in all but <u>the most exceptional cases</u>, its value will be substantially diminished." <u>Shoen v. Shoen</u>, 48 F.3d 412, 416 (9th Cir. 1995) ("<u>Shoen II</u>") (emphasis added).  Consequently, courts "should apply the test strictly to ensure that compelled disclosure is <u>the exception, not the rule</u>." <u>Jimenez v. City of Chicago</u>, 733 F. Supp. 2d 1268, 1272 (W.D. Wash. 2010) (emphasis added).

Unfortunately, in their rush to try to vindicate their own interests, Plaintiffs have propounded a Subpoena that infringes the First Amendment rights of another journalist and the readers who rely on his work.  James Queally is a Los Angeles Times reporter who, like Plaintiffs, was detained by the LAPD while covering the March 25, 2021 protest at Echo Park Lake.  Plaintiffs do not, and cannot, dispute that the facts of Mr. Queally's detention and release are well-documented in public records and the testimony of LAPD officials.  They purport to need Mr. Queally's testimony only for a single wholly speculative impeachment issue that is peripheral to the case at best, and where there also are obvious alternative sources available.

Under well-established Ninth Circuit law, that does not come close to overcoming the journalist's privilege, which requires demonstrating that the information sought is "(1) unavailable despite exhaustion of all reasonable alternative sources; (2) noncumulative; and (3) clearly relevant to an important issue in the case." <u>Shoen II</u>, 48 F.3d at 416.  Plaintiffs fail to meet this test.

MOTION TO QUASH
4938-4028-7046v.1 0026175-000606

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

1      First, Plaintiffs cannot evade the reporters privilege by claiming that they
2  only seek "published" information, as the privilege recognized in the Ninth Circuit
3  is not limited to unpublished information. See Section III.A. Moreover, Plaintiffs
4  have declined to identify the questions that they intend to ask Mr. Queally, and their
5  narrow characterization of the Subpoena is further belied by the Joint Witness List,
6  which indicates that Plaintiffs could ask Mr. Queally about a broad range of
7  unpublished editorial information regarding his newsgathering activities. Id.

8      Second, Plaintiffs cannot show that Mr. Queally's testimony meets the
9  privilege's heightened relevance requirement. See Section III.B.1. As noted above,
10 Plaintiffs' counsel have indicated that they need Mr. Queally's testimony for an
11 attenuated impeachment issue, which does "not relate to an important issue" in the
12 case under controlling law. Shoen II, 48 F.3d at 418. Plaintiffs' convoluted
13 impeachment theory also does not hold water, and Mr. Queally's testimony would
14 not be probative of any material issue. See Section III.B.1.

15     Third, the Subpoena independently is barred because Plaintiffs have "failed
16 to exhaust all reasonable alternative means for obtaining the information sought
17 from" Mr. Queally. Shoen II, 48 F.3d at 415. To the contrary, there are obvious
18 alternative sources available to Plaintiffs, including for their impeachment theory,
19 such as LAPD witnesses, public records, and publications that are judicially
20 noticeable and self-authenticating. See Section III.B.2. Plaintiffs speculate that the
21 alternative witnesses might not be truthful in their testimony, but courts applying
22 the Shoen test have held that "[r]equesters may not skirt the exhaustion requirement
23 by speculating about the alternative source's ability to fulfill their needs." Jimenez,
24 733 F. Supp. 2d at 1272.

25     Finally, Plaintiffs also cannot show that the testimony sought from Mr.
26 Queally would not be cumulative of other evidence, which is an additional reason
27 why they cannot overcome the journalist's privilege. See Section III.B.3.

28     For all of these reasons, the Subpoena must be quashed in its entirety.

## II.    FACTUAL BACKGROUND

Plaintiffs are journalists affiliated with the website Knock LA.  They filed this lawsuit on May 9, 2022 (see Dkt. No. 1), asserting various claims against the City of Los Angeles arising from their detentions by the Los Angeles Police Department while covering a March 25, 2021, protest against the LAPD's efforts to displace unhoused encampments at Echo Park Lake (the "Echo Park Protest").  Id.

Non-party journalist James Queally is a reporter for The Los Angeles Times ("The Times"); he also was detained by the LAPD while covering the Echo Park Protest.  See Queally Decl. ¶ 5.  Plaintiffs added a reference to Mr. Queally's detention in their operative Second Amended Complaint ("2AC"), filed on March 27, 2023.  See Dkt. No. 35, 2AC ¶¶ 9, 51.  More than two years later, long after the close of discovery in this matter (and after the Court denied Defendant's Motion for Summary Judgment), Plaintiffs attempted for the first time to obtain evidence from Mr. Queally.  See Queally Decl. ¶ 3, Ex. A.

On May 9, 2025, Plaintiffs served a subpoena (the "Subpoena") on Mr. Queally, seeking testimony at trial less than three weeks later, on May 27, 2025. See Queally Decl., Ex. A.  (The trial date subsequently has been continued to August 5, 2025.  See Dkt. No. 122.)  The Subpoena does not specify the subject matter of the testimony.  Id.  However, the parties' Joint Witness List filed on April 9, 2025 indicates that Plaintiffs expect Mr. Queally to testify about "the protest, his coverage of it, and being detained, but ultimately released when the officers identified him as a journalist."  Dkt. 78 at p. 4.

On May 16, 2025, Mr. Queally's counsel conferred with Plaintiffs' counsel regarding this Motion to Quash.  See Laidman Decl. ¶ 2.  Plaintiffs' counsel asserted that they do not believe the reporter's privilege applies to the Subpoena because they only intend to ask Mr. Queally about "published" information, adding that Mr. Queally had posted tweets about the Echo Park Protest and was quoted in

MOTION TO QUASH
4938-4028-7046v.1 0026175-000606

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

The Times' news coverage of the event.  Id. ¶ 3.  However, Plaintiffs' counsel would not provide the questions that they intend to ask Mr. Queally at trial.  Id.

When Mr. Queally's counsel asked Plaintiffs' counsel why they believe that information from Mr. Queally is relevant to an important issue in the case and unavailable from other sources, Plaintiffs' counsel identified only one issue.  Id. ¶ 4.  One of Plaintiffs' claims alleges that they were subject to retaliatory arrests, based in part on the assertion that their reporting is critical of the LAPD, and they were detained longer than Mr. Queally and other journalists whose work is considered to be more traditional objective news reporting.  See, e.g., Dkt. No. 71, MSJ Order at 16.  Plaintiffs' counsel explained that they expect Defendant to try to rebut that argument at trial by pointing out that Lexis-Olivier Ray, an investigative reporter for the news and culture website L.A. Taco whose work has also been critical of the LAPD, was one of the journalists who was released from detention promptly.  See Laidman Decl. ¶ 4.  Plaintiffs' counsel stated that they plan to rebut Defendant's rebuttal by arguing that the LAPD released Mr. Ray promptly because the agency was pressured to do so by Mr. Queally, who had tweeted about communicating with LAPD officials about Mr. Ray's release.  Id.

Mr. Queally's counsel questioned the plausibility of that theory, but added that in any event, the LAPD officials who actually made the decision to release Mr. Ray were obvious alternative sources, and that Mr. Queally's testimony would not be necessary to question the LAPD witnesses about the matter.  Id. ¶ 5.  Plaintiffs' counsel responded that they believe that Mr. Queally's testimony is necessary because LAPD witnesses might lie and deny that Mr. Queally had communicated to them that Mr. Ray should be released.  Id.  Plaintiffs' counsel did not identify any other issue that they believe requires testimony from Mr. Queally.  Id. ¶ 6.  The parties were unable to resolve their dispute over the Subpoena.  Id.

///

///

MOTION TO QUASH
4938-4028-7046v.1 0026175-000606

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

### III.    PLAINTIFFS' SUBPOENA TO MR. QUEALLY IS BARRED BY THE FIRST AMENDMENT REPORTER'S PRIVILEGE

Federal Rule of Civil Procedure 45(d)(3) provides that the Court must quash a trial subpoena that "requires disclosure of privileged or other protected matter" or "subjects a person to undue burden." Fed. R. Civ. Proc. 45(d)(3)(A).  The Ninth Circuit recognizes a constitutional "qualified privilege for journalists against compelled disclosure of information gathered in the course of their work." Shoen II, 48 F.3d at 414.  The privilege is not limited to confidential sources. Shoen I, 5 F.3d at 1294.  Such protection is needed because forcing news reporters to testify about even non-confidential information "'can constitute a significant intrusion into the newsgathering and editorial processes.  Like the compelled disclosure of confidential sources, it may substantially undercut the public policy favoring the free flow of information that is the foundation for the privilege.'" Id. (quoting United States v. Cuthbertson, 630 F.2d 139, 147 (3d Cir. 1980)).

The Ninth Circuit has recognized that this privilege is essential to protect "the vitality of the newsgathering process," given the "'lurking and subtle threat to journalists and their employers if disclosure of outtakes, notes, and other unused information, even if nonconfidential, becomes routine and casually, if not cavalierly, compelled.'" Shoen II, 48 F.3d at 416 (quoting United States v. LaRouche Campaign, 841 F.2d 1176, 1182 (1st Cir. 1988)).  The "compelled disclosure of non-confidential information harms the press' ability to gather information," as it "is their independent status that often enables reporters to gain access" to sources and to newsworthy situations. Shoen I, 5 F.3d at 1295 (quotation omitted).  Therefore, extending constitutional protection to non-confidential information is necessary to prevent harms including "'the threat of administrative and judicial intrusion into the newsgathering and editorial process,'" and "'the disadvantage of a journalist appearing to be an investigative arm of the judicial

system or a research tool of government or of a private party.'" Id. at 1294-95 (quoting LaRouche Campaign, 841 F.2d at 1182).[2]

Plaintiffs' Subpoena to Mr. Queally squarely implicates these core First Amendment concerns. They are seeking to co-opt his newsgathering for their own private aims, and they would force him to testify as a witness for one side of a high-profile dispute involving parties whom he regularly reports on in his work as a journalist covering crime and policing for The Times. See Queally Decl. ¶ 9. That could create an appearance of bias and seriously undermine his ability to do his job. Id. To prevent such situations, the reporter's privilege in the Ninth Circuit sets a purposefully high bar for parties seeking to compel journalists' testimony. As discussed below, Plaintiffs cannot come close to meeting their burden.

**A.    The Privilege Applies to Plaintiffs' Subpoena to Mr. Queally**

As a threshold matter, Plaintiffs' Subpoena to Mr. Queally falls squarely within the scope of the reporter's privilege. The Ninth Circuit has defined the scope of the privilege expansively, holding that "the critical question for deciding whether a person may invoke the journalist's privilege is whether she is gathering news for dissemination to the public." Shoen I, 5 F.3d at 1293. Mr. Queally is a news reporter employed by The Times, who reports on crime and policing. See Queally Decl. ¶ 2. He frequently reports about the LAPD, including articles about the LAPD's treatment of protesters and journalists at demonstrations. Id.; Exs. C-D.[3] Mr. Queally attended the Echo Park Protest in his capacity as a reporter to write

---

[2] As the California Supreme Court observed in discussing similar protections under the California Shield Law, a "'comprehensive reporter's immunity provision, in addition to protecting confidential or sensitive sources, has the effect of safeguarding '[t]he autonomy of the press.'" Miller v. Superior Ct., 21 Cal. 4th 883, 898 (1999) (quoting O'Neill v. Oakgrove Constr., 71 N.Y.2d 521, 526 (1988)). "Because journalists not only gather a great deal of information, but publicly identify themselves as possessing it, they are especially prone to be called upon by litigants seeking to minimize the costs of obtaining needed information." Id.

[3] On March 18, 2021, days before the Echo Park Protest, The Times published an article by Mr. Queally about the LAPD's decision to charge Mr. Ray in connection with reporting on another protest. See Queally Decl. ¶ 7(a); Ex. C.

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

about it for The Times; he carried his official press credentials, and intended to use the information he gathered to disseminate news to the public.  Id. ¶ 4.

The parties' witness list indicates that Plaintiffs seek Mr. Queally's testimony "about the protest, his coverage of it, and being detained, but ultimately released when the officers identified him as a journalist."  Dkt. 78, Joint Witness List p. 2.  Even after Mr. Queally was detained by the LAPD in the course of his newsgathering, he continued to gather and publicly disseminate information throughout the incident via social media posts about the police response to the protest, his detention, and the LAPD's detention of other journalists.  Id. ¶ 5.[4]

It cannot be seriously disputed that Plaintiffs' Subpoena to Mr. Queally is subject to the journalist's privilege.  See Shoen I, 5 F.3d at 1293.  Nevertheless, Plaintiffs' counsel have asserted that the privilege should not apply because they claim they will only seek "published" information.  See Laidman Decl. ¶ 3.  That misunderstands the First Amendment-based privilege, and mischaracterizes the scope of the Subpoena.

First, the Ninth Circuit never has held that the journalist's privilege is limited to unpublished information.  To the contrary, in Shoen I, the court broadly held that "when facts acquired by a journalist in the course of gathering the news become the target of discovery, a qualified privilege against compelled disclosure comes into play."  Shoen I, 5 F.3d at 1292.  Accord Shoen II, 48 F.3d at 414 (court has recognized a "qualified privilege for journalists against compelled disclosure of information gathered in the course of their work").

In adopting a version of the privilege with such an intentionally wide scope, the Ninth Circuit invoked several different rationales that apply with full force to

---

[4] Notably, Plaintiffs themselves allege in this case that their similar experiences and conduct the night of the protest all occurred in the course of their newsgathering.  E.g., Dkt. No. 35, Second Amended Complaint ("2AC") at ¶¶ 20-21 (alleging that Mr. Peltz and Ms. Gallagher each was "working as a reporter, photographer, and videographer for local news website Knock LA before and during" each one's respective "wrongful arrest") (emphasis added).

MOTION TO QUASH
4938-4028-7046v.1 0026175-000606

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

the compelled disclosure of published information, including "the disadvantage of a journalist appearing to be an investigative arm of the judicial system or a research tool of government or of a private party," "the burden on journalists' time and resources in responding to subpoenas," and the prospect "that internal policies of destruction of materials may be devised and choices as to subject matter made, which could be keyed to avoiding disclosure requests or compliance therewith rather than to the basic function of providing news and comment." Shoen I, 5 F.3d at 1294-95 (quotations omitted).

Consistent with these principles and the Ninth Circuit's decisions in Shoen I and Shoen II, courts across the country that apply a similar journalist's privilege have held that it includes published information. As one district court explained, the "reporter's privilege is implicated even when [the reporter] is sought only to authenticate or confirm otherwise nonconfidential or public information." In re Slack, 768 F. Supp. 2d 189, 194 (D.D.C. 2011). "If a reporter's privilege did not apply to nonconfidential information, it would result 'in a wholesale exposure of press files to litigant scrutiny [and] would burden the press with heavy costs of subpoena compliance," while also making them "appear to be an investigative arm of the judicial system, the government, or private parties." Id. (citation omitted).[5]

In RE/MAX International, Inc. v. Century 21 Real Estate Corp., 846 F. Supp. 910, 910-11 (D. Colo. 1994), the plaintiff sought to compel a newspaper reporter to testify "solely to authenticate [a source's] statements [that were] set forth in the [reporter's published] articles." The court nonetheless quashed the subpoena, concluding that such testimony was not "substantially relevant" and could be

---

[5] See also McMenamin v. Tartaglione, 590 A.2d 802, 811 (Pa. Commw. Ct. 1991) (applying reporter's privilege to published information), aff'd without op., 590 A.2d 753 (Pa. 1991); In re Schuman, 552 A.2d 602, 610 n.11 (N.J. 1989) (recognizing that "the free flow of information from press to public is still encumbered when a reporter is compelled to testify about published information and sources"); United States v. Blanton, 534 F. Supp. 295, 296-97 (S.D. Fla. 1982) (quashing subpoena to reporter seeking verification of published statements).

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

obtained from alternative sources.  Id. at 912.  Similarly, in Parsons v. Watson, 778 F. Supp. 214, 15 (D. Del. 1991), a party tried to depose a reporter to determine if "the contents of certain statements quoted in [her] article, or the identity of the speakers, [were] reflected accurately[.]"  The court quashed the subpoena, even though the testimony sought related to "a significant issue" in the case.  Id. at 218.  Because similar information was available from other witnesses, the court found that the subpoenaing party could not overcome the First Amendment privilege.  Id. at 218-19.  As in these cases, the federal constitutional privilege applies here as a threshold matter, regardless of the assertion by Plaintiffs' counsel that the testimony sought concerns only "published" information.[6]

Second, if Plaintiffs truly intended only to question Mr. Queally about published information – or if they purport to claim the Subpoena should be permitted for a limited scope – then at a minimum they should be expected to provide the questions that they intend to ask.  But Plaintiffs' counsel have refused to do so.  See Laidman Decl. ¶ 3.  That alone belies their claim that the Subpoena only seeks "published" information.  So does the Joint Witness List, which states that Plaintiffs seek to question Mr. Queally on a wide variety of topics that squarely implicate unpublished information about his newsgathering in connection with the Echo Park Protest.  See Dkt. 78, Joint Witness List p. 2 (Plaintiffs intend to question Mr. Queally "about the protest" and "his coverage of it" in addition to "being detained, but ultimately released when the officers identified him as a journalist").

Third, even if Plaintiffs only sought testimony about Mr. Queally's communications with the LAPD regarding Mr. Ray's detention, such questions still

---

[6] Plaintiffs' counsel may have confused the First Amendment-based journalist's privilege that applies in federal court in the Ninth Circuit with the California Shield Law, a separate protection that arises from a provision in the California State Constitution that explicitly protects "unpublished information."  Cal. Const., Art. I § 2(b).  The language of the California Shield Law does not limit what the separate First Amendment-based reporters' privilege protects.  And even under the state Shield Law, Plaintiffs' claims of only seeking published information still would ring hollow, as discussed in note 7, infra.

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

would call for unpublished information.  <u>See</u> Laidman Decl. ¶¶ 4-5.  Mr. Queally reported on the communications only in highly general terms, tweeting that after Mr. Ray told him that he was still "in a kettle," Mr. Queally "managed to get hold of an officer in media relations who rushed to do something about it."  Ex. B.  Any other information that goes beyond the four corners of Mr. Queally's posts – including necessary foundational questions or questions about Mr. Queally's newsgathering activities leading up to those communications – would constitute unpublished information.  <u>See</u> <u>Fost v. Superior Court</u>, 80 Cal. App. 4th 724, 729-30 (2000) (finding that questions about "the circumstances of [an] interview or interviews" that led to statements being quoted in an article sought unpublished information protected by the California Shield Law).[7]

Furthermore, the direct examination would open the door to cross-examination, which could explore other unpublished matters.  Plaintiffs' claim to be seeking only "published" information collapses under basic scrutiny, and if Mr. Queally is compelled to testify here, there is no practical way to avoid "a significant intrusion into the newsgathering and editorial processes."  <u>Shoen I</u>, 5 F.3d at 1294.

## B.    Plaintiffs Cannot Meet Their Burden of Overcoming The Privilege

Under controlling law, a litigant may overcome the reporter's privilege "<u>only</u> upon a showing that the requested material is (1) unavailable despite exhaustion of all reasonable alternative sources; (2) noncumulative; <u>and</u> (3) clearly relevant to an

---

[7] In <u>Playboy Enterprises, Inc. v. Superior Court</u>, 154 Cal. App. 3d 14 (1984), the leading case explaining how courts should draw the line between "published" and "unpublished" information under the California Shield Law, the court held that information about the underlying circumstances of a communication that is not included in an article remains "unpublished," regardless of "whether the published information is an exact transcription of the source material or paraphrases it."  <u>Id.</u> at 23-24.  <u>See also</u> <u>In re Howard</u>, 136 Cal. App. 2d 816, 818-19 (1955) (reporter could not be compelled to confirm interview with quoted source because "[i]t cannot be assumed from the use of quotation marks that the statement attributed to [the source] was made directly to the [reporter] … his information could have been secured in many ways").  Plaintiffs also cannot show they exhausted alternative sources or that the testimony is non-cumulative when the LAPD officers can testify concerning their detention of Mr. Ray.  <u>See</u> Section III.B.

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

important issue in the case." <u>Shoen II</u>, 48 F.3d at 416 (emphases added). Consistent with the policies underlying the privilege, courts apply this test strictly, to "ensure that compelled disclosure is the exception, not the rule." <u>Id.</u> (quoting <u>Zerilli v. Smith</u>, 656 F.2d 705, 712 (D.C. Cir. 1981) ("if the privilege does not prevail in all but the most exceptional cases, its value will be substantially diminished")). <u>See also Harbert v. Priebe</u>, 466 F.Supp.2d 1214, 1216 (N.D. Cal. 2006) ("<u>Shoen II</u> imposes high hurdles against compelling discovery from third party journalists"); <u>Wright v. Fred Hutchinson Cancer Research Center</u>, 206 F.R.D. 679, 682 (W.D. Wash. 2002) ("to overcome a claim of journalist's privilege, the party seeking discovery bears a far heavier burden in establishing relevance than is applicable in the normal discovery context").

To the extent that one of Plaintiffs' claims concerns their allegations that they were detained longer than Mr. Queally, that does not provide any basis for forcing him to testify. The pertinent facts – including the timing and location of Mr. Queally's detention and release – are matters of public record. <u>See</u> Cal. Gov't Code §§ 7923.610, 7923.615. That information also is readily available from obvious alternative sources, including police witnesses involved in the detention and release, and related records that Plaintiffs already have. <u>See</u>, <u>e.g.</u>, Dkt. No. 71 (MSJ Order at 6). For example, this Court's Order denying Defendants' MSJ attributes this information to various other sources, including an LAPD report to the City Council on the agency's detention and arrest of journalists at demonstrations, which contains detailed information about the detention and release of journalists including Mr. Queally during the Echo Park Protest, citing police officer "Body Worn Video," other "Department reports," and officer interviews. <u>See</u> Dkt. No. 71 (MSJ Order at 7); Dkt. No. 64-34 (Ex. W) at pp. 4-5.

The record indicates that Plaintiffs either have already obtained the relevant information, or could obtain it from LAPD records or witnesses – indeed, the parties' Joint Witness List appears to include at least 17 witnesses from the LAPD.

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

See Dkt. No. 78.  Plaintiffs have not disputed that they have sufficient alternative sources for information regarding Mr. Queally's detention and release.  Instead, during the meet-and-confer discussions, Plaintiffs' counsel identified only one issue where they purport to need Mr. Queally's testimony:  his public statements regarding his communications with the LAPD concerning Mr. Ray.  See Laidman Decl. ¶¶ 4-5.  But as discussed below, that does not come close to overcoming the reporter's privilege.  It is not clearly relevant to an important issue in the case, and there are obvious alternative sources for this information as well, which at best is cumulative of other evidence.

### 1. Plaintiffs Cannot Establish That The Information Sought Is Clearly Relevant to An Important Issue In The Case

Plaintiffs have a strict burden of demonstrating that the information sought from Mr. Queally is clearly relevant to an important issue in the case.  See Shoen II, 48 F.3d at 416.  As the Ninth Circuit has emphasized, the party seeking to overcome the journalist's privilege "must [make] a showing of actual relevance; a showing of potential relevance will not suffice."  Id. (emphasis added).  As one court applying this standard has explained, "[e]ven if the information sought 'may well contain' evidence relevant to a claim, if the evidence would not, without more, establish the claim, actual relevance does not exist."  Wright, 206 F.R.D. at 682 (emphasis added).  See also Jimenez v, 733 F. Supp. 2d at 1273 (party seeking to overcome journalist's privilege must show the information's "relevance to the 'heart' of the underlying litigation").

Plaintiffs claim to need Mr. Queally's testimony to discuss his social media posting about his communications with the LAPD regarding the detention and release of Mr. Ray.  See Laidman Decl. ¶ 4.  Plaintiffs allege that the LAPD detained them longer than other reporters because Plaintiffs have criticized the police; Plaintiffs' counsel have indicated that to rebut that point, Defendant intends to argue that the LAPD promptly released Mr. Ray, whose work also has been

MOTION TO QUASH
4938-4028-7046v.1 0026175-000606

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

critical of the police.  Id.  Plaintiffs apparently intend to rebut the rebuttal by arguing that the LAPD only released Mr. Ray because they were pressured to do so by Mr. Queally, who had posted a tweet stating that he communicated with the agency about letting Mr. Ray go.  Id.  This strained theory is not "clearly relevant to an important issue in the case" for purposes of the privilege for several different reasons.  Shoen II, 48 F.3d at 416.

First, Plaintiffs' theory is inconsistent with the record, in a way that contradicts their own arguments.  As an initial matter, Mr. Queally's own reporting has scrutinized the LAPD and held the agency accountable for its treatment of journalists at protests.  See Exs. C-D.  And Mr. Queally's tweet about Mr. Ray was part of a series of posts in which he reported on the detention of several different journalists; he noted that he had told LAPD officials that they should release all of the reporters, including journalists like Plaintiffs affiliated with Knock LA. Specifically, Mr. Queally tweeted the following the night of the Echo Park Protest:

- 3/25/21, 10:46 p.m.:  "There was definitely one @KNOCKdotLA reporter sitting next to me on the curb. I apologize I did not get his name. I tried to point out if they were releasing me because I was press they should do the same to the others but I think he may have been put on a bus by then. Sorry."

- 3/25/2021, 11:29 p.m.:  "Hey @LAPDHQ what's up with this? There was @KNOCKdotLA person next to me sitting on a curb in zip ties, and he got taken off toward a bus when I didn't. These are journalists too. Let 'em out."

- 3/25/21, 11:49 p.m.:  "There are still @KNOCKdotLA reporters in custody. @ShotOn35mm called me after I got out, told me he was STILL in a kettle. I managed to get hold of an officer in media relations who rushed to do something about it. I'm still worried he might have gotten arrested otherwise."

MOTION TO QUASH
4938-4028-7046v.1 0026175-000606

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

● 3/26/21, 12:07 a.m.: "@ACatWithNews is apparently still in custody. Trying to call @LAPDHQ to find out what's up with that."

Queally Decl. ¶ 5, Ex. B.

Mr. Ray is @ShotOn35mm,[8] and @ACatWithNews is Sean Beckner-Carmitchel, an independent journalist and frequent contributor to Knock LA.[9] Mr. Beckner-Carmitchel was released from custody at 12:30 a.m. on March 26, 2021, after Plaintiffs were released. See Dkt. No. 64-34, LAPD Report at p. 4. (Mr. Peltz was released at 12:25 a.m. on March 26; Ms. Gallagher was released at 11:04 p.m. on March 25. Id.). The fact that Mr. Queally tweeted about telling LAPD officials they should release all of the detained reporters – and specifically Mr. Beckner-Carmitchel and a Knock LA reporter who may very well have been Mr. Peltz – undercuts Plaintiffs' conjecture that Mr. Ray was released promptly only because the LAPD somehow felt pressured by Mr. Queally. Because Plaintiffs claim that they only need Mr. Queally's testimony in connection with this questionable theory that does not support their claims, their attempt to overcome the reporter's privilege fails on this basis alone. See Harbert, 466 F. Supp. 2d at 1216 ("Plaintiffs' mere belief that Defendants released Plaintiffs' … information to the media is not sufficient to show that the journalists' records are 'clearly relevant' to an important issue in the case," particularly where that information was a matter of public record, which "undermines their privacy claims").[10]

---

[8] See Lexis-Olivier Ray Twitter account, https://x.com/ShotOn35mm

[9] See Sean Beckner-Carmitchel Twitter account, https://x.com/ACatWith News; Knock LA Author Page, Sean Beckner-Carmitchel, https://knock-la.com/ author/acatwithnews/.

[10] In affirming the application of the California Shield Law to a criminal defendant's subpoena to a journalist, the California Supreme Court similarly found that the defendant could not meet the relevance threshold required to overcome the Shield Law where the information sought was "either too speculative to assist defendant or would harm, rather than materially assist, the defense." People v. Sanchez, 12 Cal. 4th 1, 57 (1995).

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

**Second**, even if this was a viable theory (which it is not), it is a peripheral issue, at best. Plaintiffs' argument that they were treated differently than other journalists who were detained is merely an "alternative" theory in support of their retaliatory arrest claim. See Dkt. No. 71, MSJ Order at 10, 14. Mr. Queally's public statements about Mr. Ray are not in the complaint (which does not mention Mr. Ray at all, see Dkt. No. 35), and the Court's MSJ Order downplayed the importance of Mr. Ray's release, stating: "[t]hat one other independent reporter who is critical of police was released on this instance does not immunize the City from arguments of retaliation," adding that "the ACLU of Southern California accused the LAPD of threatening that same reporter with arrest on later occasions." Dkt. 71 at p. 16. The only claim in Plaintiffs' operative pleading that references Mr. Queally and/or the times when different reporters were released from detention is the First Claim for Relief, which the Court dismissed, pursuant to the parties' stipulation. See Dkt. Nos. 35 (2AC ¶¶ 64-107); 62-63, 71 (MSJ Order at 8).

Plaintiffs do not need Mr. Queally's testimony to pursue their theory about Mr. Ray's release, because ultimately the question of why the LAPD released him when it did is something that only the LAPD can answer. See Section III.B.2, infra. If Plaintiffs want to ask the relevant LAPD officials if they were influenced by Mr. Queally, they are free to do so. Plaintiffs do not need Mr. Queally's testimony to introduce his public statements. Id. Plaintiffs' counsel claim they want Mr. Queally to contradict the testimony of police officials if those officials lie about their communications with Mr. Queally and deny that he ever communicated with them about releasing Mr. Ray. See Laidman Decl. ¶ 5. Such testimony, therefore, is sought for purely speculative impeachment purposes.

The Ninth Circuit has observed that impeachment does "not relate to an important issue" for purposes of overcoming the reporter's privilege. Shoen II, 48 F.3d at 418 (rejecting attempt to compel a journalist to testify to impeach a party by demonstrating that the party "was less than candid" during a deposition); see also

MOTION TO QUASH
4938-4028-7046v.1 0026175-000606

**DAVIS WRIGHT TREMAINE** LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

*Jimenez*, 733 F. Supp. 2d at 1273 ("the impeachment of a third party" is "merely collateral" to the claims in the lawsuit).[11]

That is especially true here, where the purported need for the impeachment evidence is wholly speculative, *i.e.*, it rests entirely on Plaintiffs' conjecture that LAPD officials will deny communicating with Mr. Queally about Mr. Ray's release. See *Shoen II*, 48 F.3d at 416 ("a showing of potential relevance will not suffice"); *Harbert*, 466 F. Supp. 2d at 1216 ("mere belief" that information might help case did not meet "clearly relevant" factor).

*Finally*, the procedural timeline in this case underscores the lack of importance of Mr. Queally's testimony. Plaintiffs filed this lawsuit in May 2022, and did not attempt to obtain any evidence from Mr. Queally for almost <u>three years</u>, until after discovery was closed and the Court had ruled on Defendants' MSJ. See Dkt. No. 71; Ex. A. Waiting until the eve of trial to approach a witness for the first time, in a case that has been pending for years, is strongly indicative that Mr. Queally's testimony is not clearly relevant to an important issue in the case, as required to overcome the privilege. See *Shoen II*, 48 F.3d at 416.

## 2. The Information is Available from Other Sources.

The Subpoena independently fails because Plaintiffs cannot demonstrate that the information they seek is "unavailable despite exhaustion of all reasonable alternative sources." *Shoen II*, 48 F.3d at 416.

As the Ninth Circuit explained in *Shoen I*, "compelled disclosure from a journalist must be a <u>last resort</u> after pursuit of other opportunities has failed." 5

---

[11] See also *RE/MAX*, 846 F. Supp. at 912 (rejecting subpoena to journalist where "[t]he only possible value in deposing [the reporter] is to impeach [a witness's] deposition testimony," because the value of the testimony for that purpose would be "de minimis"); *United States v. Burke*, 700 F.2d 70, 77 (2d Cir. 1983) (quashing subpoena to reporter where criminal defendant "failed to make the clear and specific showing that these documents were necessary or critical to the maintenance of his defense," even though the reporter's notes "may have been material and relevant inasmuch as they might have contradicted the trial testimony of" a prosecution witness).

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

MOTION TO QUASH
4938-4028-7046v.1 0026175-000606

F.3d at 1297-98 (emphasis added; quotation omitted).  The subpoenaing party must make a "strong showing" that "there is no other source for the information requested."  Riley v. City of Chester, 612 F.2d 708, 716 (3d Cir. 1979).  Plaintiffs cannot make that showing here, where there are numerous alternative sources.

As noted above, only the LAPD officials, not Mr. Queally, would know the reasons for Mr. Ray's release, including whether and to what extent Mr. Queally's statements played any role.  Plaintiffs do not need testimony from Mr. Queally to ask the relevant LAPD officials about their communications with him, or if they saw his tweets.  Nor do they need Mr. Queally to testify to introduce his posts about his communications with the LAPD regarding the reporter detentions.  See Haas Automation, Inc. v. Steiner, 750 F. Supp. 3d 1107, 1115 (C.D. Cal. 2024) (taking judicial notice of tweets).[12]  These LAPD officials are obvious alternative sources, along with documentary evidence in the form of police reports and internal communications about the agency's decisions concerning the release of detained journalists, including Mr. Ray.  Any written communications like emails or text messages between Mr. Queally and LAPD officials would be subject to disclosure under the California Public Records Act ("CPRA").  See City of San Jose v. Superior Court, 2 Cal. 5th 608, 614 (2017) (public officials' emails on official business are public records under CPRA).

Plaintiffs' failure to exhaust any of these ample alternative sources precludes them from forcing Mr. Queally to testify in this matter.  See Shoen I, 5 F.3d at 1297-98 (privilege barred subpoena to author where party had not deposed the interview subject who was the "most patently available other source"); Michael v. Estate of Kovarbasich, 2015 WL 8750643, at *4 (C.D. Cal. Dec. 11, 2015) (same;

---

[12] This Court already held that another one of Mr. Queally's tweets was properly admitted and considered in connection with the summary judgment proceedings.  See Dkt. 71 at 3, n. 3 (overruling Defendant's hearsay objection to Mr. Queally's tweet, Dkt. 64-6, and finding the statement was properly offered to establish that some journalists did not remain in the media staging area).

MOTION TO QUASH
4938-4028-7046v.1 0026175-000606

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

denying motion to compel for failure to exhaust alternative sources where litigant could not show information sought from journalist was unavailable from the person whom she interviewed); Carushka, Inc. v. Premiere Products, Inc., 1989 WL 253565, at *3 (C.D. Cal. Sept. 1, 1989) (refusing to compel production of unpublished materials from magazine publisher where the litigants could "elicit the relevant testimony from [the source] herself").

In counsel's meet-and-confer discussion, Plaintiffs' counsel speculated that LAPD officials are not adequate alternative sources because they might lie about whether Mr. Queally communicated with them about releasing Mr. Ray.  See Laidman Decl. ¶ 5.  Courts consistently have rejected such speculation as grounds to evade the exhaustion requirement.  For example, in Jimenez, the defendants in a Section 1983 lawsuit could not enforce a subpoena against a journalist because they had not deposed the plaintiff, whom the journalist had interviewed, and had therefore failed to meet the exhaustion requirement.  733 F. Supp. 2d at 1272.  Like the Plaintiffs here, the Jimenez defendants argued that the plaintiff was not an adequate alternative source, claiming that "due to the time elapsed," the plaintiff might "be unable to recall the communications if deposed."  Id.  The court rejected the argument, observing that "[r]equesters may not skirt the exhaustion requirement by speculating about the alternative source's ability to fulfill their needs."  Id.  See also Shoen I, 5 F.3d at 1297 (party could not "avoid the exhaustion requirement by speculating, without supporting evidence, that [other witness'] advanced age may have dulled his faculties"); Wright, 206 F.R.D. at 682 (rejecting argument that evidence was necessary from journalists because related testimony from a party "may not be as detailed as the underlying correspondence" and the party's discovery responses "were less than satisfactory," which "does not relieve defendants of their obligation to at least attempt to obtain the information through other avenues").

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

Because Plaintiffs cannot demonstrate that they have exhausted alternative sources given the many obvious alternative sources besides Mr. Queally, the Subpoena is barred on this independent ground.

### 3.    The Information Sought Is Cumulative

For similar reasons, Plaintiffs cannot meet their additional burden of showing that the information sought from Mr. Queally is "not cumulative."  See Shoen II, 48 F.3d at 416.  "When testimony sought from a reporter would be cumulative of other evidence, it cannot be 'necessary or critical' to an action so as to override the First Amendment privilege."  In re Behar, 779 F. Supp. 273, 275-76 (S.D.N.Y. and C.D. Cal. 1991).  See also Burke, 700 F.2d at 77-78 (quashing subpoena where information sought "would be merely cumulative and thus would not defeat [the reporters'] First Amendment privilege").

Evidence related to the different times when different reporters were released from detention is merely cumulative of other evidence to support Plaintiffs' retaliatory arrest claim, as the Court acknowledged in the MSJ Order.  See Dkt. No. 71, MSJ Order at 16-17 (also citing evidence "that the LAPD was 'tracking the social media of journalists that claimed to be [in the crowd after the dispersal order],'" that "the LAPD officer charged with identifying members of the press received emails that included Knock LA's negative coverage of the LAPD," and that "Chief Moore approved the release of a [different] reporter who could 'garner significant attention due to [their] status'").  With respect to Plaintiffs' questionable theory that pressure from Mr. Queally caused Mr. Ray's release (but apparently not the release of other independent journalists whom Mr. Queally also urged the LAPD to let go), any testimony from Mr. Queally on that point would be cumulative of other far more probative evidence from LAPD officials involved in detaining Mr. Ray and related public records.  See Section III.B, supra.

To the extent that Plaintiffs seek Mr. Queally's testimony on any other topic (despite their representations to the contrary), the parties' Joint Witness List

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

contains over 30 separate witnesses.  <u>See</u> Dkt. 78.  at p. 4.  It indicates that the parties expect Mr. Queally to testify about "the protest, his coverage of it, and being detained, but ultimately released when the officers identified him as a journalist." <u>Id.</u>  That is nearly identical to the descriptions for several other witnesses who apparently are slated to testify about the detention of journalists at the Echo Park Protest, in addition to Plaintiffs themselves.  <u>Id.</u>  Any testimony from Mr. Queally about the protest and his detention would be cumulative of numerous other percipient witnesses, including the Plaintiffs, as well as related public records.  <u>See</u> Section III.B, <u>supra</u>.

Because the information sought from Mr. Queally is cumulative of other testimony and established facts, Plaintiffs cannot overcome the constitutional reporter's privilege for this additional, independent reason.

## IV.    CONCLUSION

Plaintiffs cannot meet their burden of overcoming the constitutional reporter's privilege for all of the reasons discussed above, and Mr. Queally respectfully requests that the Court grant the Motion and quash the Subpoena.


DATED: May 23, 2025                        DAVIS WRIGHT TREMAINE LLP
                                           KELLI L. SAGER
                                           DAN LAIDMAN
                                           CRISTINA SALVATO


                                           By:_____/s/ Dan Laidman_____
                                                        Dan Laidman

                                           Attorneys for Non-Party Journalist
                                           James Queally

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for non-party journalist James Queally, certifies that this brief contains 6,762 words, which complies with the word limit of L.R. 11-6.1 and this Court's Civil Standing Order.

DATED: May 23, 2025

DAVIS WRIGHT TREMAINE LLP
KELLI L. SAGER
DAN LAIDMAN
CRISTINA SALVATO


By: _____/s/Dan Laidman_____
                Dan Laidman

Attorneys for Non-Party Journalist
James Queally

MOTION TO QUASH
4938-4028-7046v.1 0026175-000606

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899