UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHAN PELTZ et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF LOS ANGELES et al.,<br><br>Defendants. | Case No. 2:22-CV-03106-HDV(AGRx)<br><br>**ORDER GRANTING NON-PARTY JOURNALIST JAMES QUEALLY'S MOTION TO QUASH [123]** |

1

## I. INTRODUCTION

Plaintiffs Jonathan Peltz and Kathleen Gallagher—journalists with an independent news website critical of the Los Angeles Police Department ("LAPD")—initiated the instant action, seeking to vindicate their First Amendment right of access and their right to be free from retaliatory arrest. Second Amended Complaint ("SAC") [Dkt. No. 35]. In so doing, Plaintiffs sought the testimony of non-party journalist James Queally. But Queally now contends that Plaintiffs attempt to infringe on *his* First Amendment right to avoid being compelled to testify about information gathered in the course of his reporting.

To that end, Queally moves to quash his trial subpoena ("Motion"). [Dkt. No. 123]. Invoking the journalist's privilege, he asserts that Plaintiffs cannot show that they have exhausted all reasonable alternative sources or that his testimony would be noncumulative and clearly relevant to an important issue in the case such that it would overcome the journalist's privilege against compelled testimony. The Court agrees. Plaintiffs have failed to identify any subject that justifies compelling Queally's testimony. However important Plaintiffs' claims may be, they cannot justify trammeling on a privilege that protects all journalists, Plaintiffs included.

## II. BACKGROUND

On March 25, 2021, Jonathan Peltz and Kathleen Gallagher, journalists with Knock LA, an independent news website, were arrested in connection with a protest near Echo Park Lake. Order Denying Defendant City of Los Angeles' Motion for Summary Judgment ("MSJ Order") 3–7 [Dkt. No. 71]. Plaintiffs, along with other journalists, including *Los Angeles Times* reporter James Queally, remained in the crowd throughout the protest. *Id.* at 3.

At approximately 8:15 p.m., LAPD Captain Richard Stabile declared everyone in the crowd under arrest for failing to disperse, in violation of California Penal Code section 409. *Id.* at 5. Queally was briefly detained by the LAPD and subsequently released. Declaration of James Queally ("Queally Decl.") ¶ 5 [Dkt. No. 123-1]. After his release, Queally posted his reflections on the LAPD's treatment of journalists on Twitter (now X) and demanded that other reporters be released. *Id.*, Ex. B [Dkt. No. 123-4].

> 9:56 p.m. I'm out. Thanks to @ShotOn35mm [Lexis-Olivier Ray] and others for making noise. Now I'm making calls to make sure he doesn't get arrested. Apparently there are still several journalists in there #EchoParkRiseUp.
>
> 10:46 p.m. There was definitely one @KNOCKdotLA reporter sitting next to me on the curb. I apologize I did not get his name. I tried to point out if they were releasing me because I was press they should do the same to the others but I think he may have been put on a bus by then. Sorry.
>
> 11:29 p.m. Hey @LAPDHQ what's up with this? There was @KNOCKdotLA person next to me sitting on a curb in zip ties, and he got taken off toward a bus when I didn't. These are journalists too. Let 'em out.
>
> 11:40 p.m. Gonna try and do this objectively. Some facts: Yes, @LAPDHQ declared a dispersal order. They gave people well over 20 minutes to disperse. They had been getting hit with strobe lights and been taunted, but I didn't see anything thrown at them until after they charged the crowd.
>
> 11:43 p.m. I announced myself as press several times, and credit to the arresting officers, they checked my credential pretty quickly and got a supervisor. They seemed to be aware this was ... not how things were supposed to go.
>
> 11:47 p.m. From there the arresting officers did what they were told. They were polite. Two other ranking officers showed up, figured out who I was (thanks again to all the Twitter noise), and let me go. I appreciate that, and I can acknowledge mistakes were made and move on. BUT…
>
> 11:49 p.m. There are still @KNOCKdotLA reporters in custody. @ShotOn35mm called me after I got out, told me he was STILL in a kettle. I managed to get hold of an officer in media relations who rushed to do something about it. I'm still worried he might have gotten arrested otherwise.
>
> 11:52 p.m. It wasn't [over once I was detained]. More than one officer asked why I didn't stay in the "media pen." I went over to the media pen, by the way. Media pens are deliberately setup to keep reporters AWAY from news. Tonight was no different. It was nowhere near the protests or action in the park.

Declaration of Susan E. Seager ("Seager Decl.") ¶¶ 4a.–c., f., i.–k., m., Ex. 1 at 9–13 [Dkt. No. 124-1]; Queally Decl. ¶ 5, Ex. B at 2–4.

A few days later, Queally replied to Ray's tweet, "I'm just glad you're alright man. It was a bit of a privilege check to see how I got treated that night vs. how you've been treated in the past." Seager Decl. ¶ 4s., Ex. 1 at 14.

3

1    As the LAPD began processing members of the crowd, then-LAPD Chief Michel Moore was
2    in contact with the LAPD command staff about the arrests of journalists. When an unnamed officer
3    told Chief Moore that James Queally had posted about being detained, Moore replied that "We
4    should be clearing media . . . at the field site and not jail." MSJ Order at 6. The LAPD ultimately
5    released three reporters: Queally, Kate Cagle of *Spectrum News 1*, and Lexis-Olivier Ray of *L.A.*
6    *Taco*. *Id.*

7    Peltz and Gallagher filed the instant action on May 9, 2022 against the City of Los Angeles
8    and Chief Michel Moore. Plaintiffs allege that the City maintained unconstitutional customs,
9    practices, and policies; violated the Bane Act, Cal. Civ. Code section 52.1; and falsely arrested
10   Plaintiffs. *See* SAC. In particular, Plaintiffs allege that they were subjected to retaliatory arrest for
11   their anti-LAPD coverage, while other journalists, including Queally, were immediately released.
12   *Id.* ¶¶ 9, 51, 81, Ex. B.

13   On February 20, 2025, the Court denied the City's motion for summary judgment on all
14   claims remaining against it. *See* MSJ Order  The parties prepared for trial, initially scheduled for
15   May 27, 2025. In their pretrial filings, Plaintiffs averred that, in addition to numerous LAPD
16   officers, they intended to adduce testimony from other journalists who were detained or arrested at
17   the Echo Park protest, including Sean Beckner-Carmitchel, Kate Cagle, Lexis-Olivier Ray, and
18   James Queally. Joint Witness List 1–2 [Dkt. No. 78]. Plaintiffs served Queally with a subpoena
19   seeking his testimony at trial. Queally Decl. ¶ 3, Ex. A [Dkt. No. 123-2]. On the parties' stipulation,
20   the Court continued trial from May 27, 2025 to August 5, 2025. [Dkt. No. 122].

21   On May 23, 2025, Queally moved to quash his trial subpoena. The Court heard oral
22   argument on the matter on June 26, 2025 and took the matter under submission. [Dkt. No. 131].

23   **III.   LEGAL STANDARD**

24   Federal Rule of Civil Procedure 45 permits parties to issue a subpoena commanding the
25   person to whom it is directed to attend and give testimony. Fed. R. Civ. P. 45(a)(1)(A). Courts have
26   discretion to quash or modify a subpoena. *S.E.C. v. CMKM Diamonds, Inc.*, 656 F.3d 829, 832 (9th
27   Cir. 2011). *See* Fed. R. Civ. P. 45(d)(3)(A) (providing that courts "must quash or modify a subpoena
28

4

that . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies").

### IV. DISCUSSION

Journalists enjoy a qualified privilege against the compelled disclosure of information "acquired . . . in the course of gathering the news[.]" *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993) ("*Shoen I*") (citing *Branzburg v. Hayes*, 408 U.S. 665 (1972)). "Rooted in the First Amendment," the journalist's privilege recognizes "that society's interest in protecting the integrity of the newsgathering process" is "of sufficient social importance to justify some incidental sacrifice of sources of facts needed in the administration of justice." *Id.* at 1292 (quoting *Herbert v. Lando*, 441 U.S. 153, 183 (1979)).

A litigant is entitled to disclosure of nonconfidential information "only upon a showing that the requested material is: (1) unavailable despite exhaustion of all reasonable alternative sources; (2) noncumulative; and (3) clearly relevant to an important issue in the case." *Shoen v. Shoen*, 48 F.3d 412, 416 (9th Cir. 1995) ("*Shoen II*").[1] This test aims to "ensure that compelled disclosure is the exception, not the rule." *Id.* (quoting *Zerilli v. Smith*, 656 F.2d 705, 712 (D.C. Cir. 1981) ("[I]n the ordinary case the civil litigant's interest in disclosure should yield to the journalist's privilege.")).

---

[1] As an initial matter, the Court rejects Plaintiffs' theory that Queally's testimony may be compelled as "published information." Plaintiffs' Opposition to Motion ("Opposition") 8–11 [Dkt. No. 124]. Even setting aside the fact that binding Ninth Circuit precedent does not explicitly distinguish between published and nonpublished material, Plaintiffs seek Queally's testimony about his "personal experience and observations," which are not limited to published material. *Shoen I*, 5 F.3d 1289, 1292 (applying the journalist's privilege to all "facts acquired by a journalist in the course of gathering the news"); Opposition at 7.

Insofar as Plaintiffs merely seek to authenticate Queally's tweets and articles, they may request that the Court take judicial notice of them. "Courts may take judicial notice of publications introduced to 'indicate what was in the public realm at the time, not whether the contents of those articles were in fact true.'" *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010) (quoting *Premier Growth Fund v. Alliance Capital Mgmt.*, 435 F.3d 396, 401 n.15 (3d Cir. 2006)). *See also Nat'l Rifle Ass'n of Am. v. City of Los Angeles*, 441 F. Supp. 3d 915, 933–34 n.6 (C.D. Cal. 2019) ("The Court therefore takes judicial notice of O'Farrell's statements via his verified Twitter account.") (citation omitted). But adducing trial testimony about Queally's efforts to secure Ray's release—let alone broader topics identified by Plaintiffs—would necessarily intrude on unpublished material.

1  Queally has met his initial burden of showing that the journalist's privilege applies.
2  Plaintiffs seek to adduce his testimony about his experiences while reporting on the March 25, 2021
3  protest at Echo Park Lake. Queally Decl. ¶ 4. Queally was undoubtedly "gathering news for
4  dissemination to the public." *Shoen I*, 5 F.3d at 1293. Accordingly, the burden shifts to Plaintiffs to
5  establish their entitlement to the information.

6  Plaintiffs vacillate on what they hope to obtain from Queally's testimony. During meet and
7  confer efforts for the instant motion, Plaintiffs averred that they require Queally's testimony only to
8  counter Defendant's anticipated rebuttal to Plaintiffs' retaliatory arrest argument. Declaration of
9  Dan Laidman ("Laidman Decl.") ¶¶ 2–4 [Dkt. No. 123-6]. In particular, Plaintiffs expect that
10 Defendant will attempt to counter their retaliatory arrest claim by pointing out that Lexis-Olivier
11 Ray, another journalist critical of the LAPD, was released promptly. *Id.* ¶ 4. Queally's testimony
12 would establish that Ray's early release came about as a result of Queally's advocacy on Ray's
13 behalf. *Id*. But Plaintiffs' Opposition indicates that they also seek Queally's testimony about "his
14 personal experience and observations as an eyewitness" of the LAPD's "media pen," his own
15 unlawful detention, and his eyewitness account of Peltz's detention, among myriad other topics.
16 Plaintiffs' Opposition to Motion 7 [Dkt. No. 124]. *See also* Joint Witness List at 2 (noting that
17 Queally would testify "about the protest, his coverage of it, and being detained, but ultimately
18 released when the officers identified him as a journalist"). At oral argument, Plaintiffs struck a
19 middle ground, averring that they seek to have Queally authenticate his tweets, confirm that the
20 *Crespo* area did not offer reporters a view of the protests, and recount his efforts to secure Ray's
21 release.

22 Plaintiffs face a double bind. If they seek Queally's testimony for the limited purpose of
23 establishing his efforts to secure Ray's release, such testimony is certainly unique. But Plaintiffs
24 face an uphill battle in showing relevance "to an important issue in the case." *Shoen II*, 48 F.3d at
25 416. The party seeking to overcome the journalistic privilege "must [make] a showing of actual
26 relevance; a showing of potential relevance will not suffice." *Id.* This is a heavy burden. "Even if
27 the information sought 'may well contain' evidence relevant to a claim, if the evidence would not,
28 without more, establish the claim, actual relevance does not exist." *Wright v. Fred Hutchinson*

6

*Cancer Rsch. Ctr.*, 206 F.R.D. 679, 682 (W.D. Wash. 2002) (quoting *Shoen II*, 48 F.3d at 417). *See also Shoen II*, 48 F.3d at 418 (suggesting that testimony that "might provide valuable impeachment material" does not rise to the level of relevance required to overcome a journalist's privilege). Queally's testimony that he advocated for Ray's release cannot establish—without more—that the LAPD released Ray *because of* Queally's advocacy, let alone establish Plaintiffs' underlying claim that the LAPD arrested Plaintiffs in retaliation for their anti-LAPD reporting.

Further, Plaintiffs have not shown that they exhausted reasonable alternative sources. In an effort to carry their burden to show exhaustion, Plaintiffs' counsel merely avers that she "did not see any records providing the name of the LAPD officer who detained Mr. Queally or the supposed body camera footage of Mr. Queally's detention[.]" Seager Decl. ¶ 3. Plaintiffs do not proffer interrogatories requesting information about Queally's arrest or his efforts to secure Ray's release. Neither do they offer deposition testimony from LAPD officers expressing ignorance on these topics. "[M]erely asking interrogatories does not exhaust reasonable alternatives," and Plaintiffs have not shown that they have done even that. *Harbert v. Priebe*, 466 F. Supp. 2d 1214, 1216 (N.D. Cal. 2006). *See* Wright, 206 F.R.D. at 682 ("[T]he fact that plaintiffs' responses to written discovery were less than satisfactory does not relieve defendants of their obligation to at least attempt to obtain the information through other avenues, such as depositions and/or motions to compel.").

If, on the other hand, Plaintiffs seek to adduce Queally's testimony about his own experience at the March 25 protest or the LAPD's policies and practices as to detaining journalists, such testimony is clearly relevant to a central issue in this case: whether the City's policies amounted to deliberate indifference to Plaintiffs' First Amendment rights. But then, Plaintiffs cannot establish that they exhausted reasonable alternative sources or that Queally's testimony would be noncumulative. If Plaintiffs failed to exhaust alternative sources of information about Queally's efforts to advocate for Ray's release, they have certainly failed to show that they have diligently pursued *all* other sources corroborating Queally's observations about the *Crespo* area, the LAPD's conduct on March 25, and the LAPD's policies and practices more broadly.

Plaintiffs have likewise failed to show that Queally offers unique testimony about any of these broader topics. Plaintiffs plan to adduce testimony from then-Chief Moore, former Police

7

1  Commissioner Gerald Chaleff, and Commander Donald Graham, Captain Stabile, among numerous
2  other LAPD officers, who can testify to the LAPD's policy and practices concerning the detention of
3  journalists. Joint Witness List at 1–4. Plaintiffs also plan to adduce testimony from other journalists
4  who were detained at the March 25 protest, including Sean Beckner-Carmitchel, Kate Cagle, and
5  Lexis-Olivier Ray. *Id.* at 1–2. Where such ample alternative sources exist and where Queally's
6  testimony on any highly relevant topics is cumulative, Plaintiffs cannot overcome the journalist's
7  privilege.

**V.  CONCLUSION**

James Queally's motion to quash is granted.

Dated: July 23, 2025

Hernán D. Vera
United States District Judge